Thank you, everyone. The first argued case this morning is No. 157010, Bryan v. McDonald. Mr. Levinson. Thank you, ma'am. Good morning, Honorable Judges. I'm Jared Levinson, here representing Mr. Bryan. Today, Mr. Bryan comes here because he meets the three requirements for the writ of mandamus in this case. Mr. Bryan will show that the VA has made an absolute, arbitrary, and systematic refusal to meet its duties in its consideration of his VA benefits claims. Mr. Levinson, maybe we're both going to ask for the same clarification. One of the points that you made was that there had been a 100% rating 30 years ago, and apparently the government recognizes that. What happened to that? Your Honor, the government refuses to recognize that 100% rating. The government has arbitrarily refused to recognize that rating. The rating, Your Honor, was issued way back in 1978. The rating simply disappeared into the government system, and there may be a good reason for that, Your Honor. For many years, dental ratings, which by the way represent only 2% of VA benefits claims, were kept completely separate from all the other benefits claims. But Mr. Levinson, doesn't mandamus require a lack of another remedy? Isn't he getting another remedy? No, Your Honor. Something in February, and isn't there, are there proceedings still pending? Your Honor, the problem is those proceedings have been pending forever, and it is because of the intentional misconduct of the government, which I will discuss in detail, and I will provide this court with a timeline of events which will show conclusively that there is no way that this is a mere delayed case. And are these facts questions, not by jurisdiction? No, Your Honor, because the issue here is whether there is an adequate remedy, and these are not fact questions, Your Honor. They are established facts. They are established matters of law, in fact, because if you look at the actions taken by the government, they are tantamount to an arbitrary and capricious refusal, and meet the legal standard. Also, Your Honor, there is a fundamental due process question here under the Fifth Amendment, because when you are denied adequate due process, the court can then consider the application of facts and law, and law to facts in this kind of a situation. Here, the deprivation of due process, as the court will see, is extreme, including, by the way, the complete denial regarding Mr. Bryant's dental care, the complete denial of any appeals process whatsoever, either on the clinical side or on the non-clinical side. When Mr. Bryant went to file an appeal, he was met with a complete slam door in his face by the GA Regional Council. He was denied all, I repeat, all appellate rights that are guaranteed under VA law. Let me make sure that I understand that 100% rating. The government says that that was for medical treatment purposes, not for compensation purposes. What happened since 1978? Was any attempt made to follow up on that one aspect, which, from the way you presented it, is dispositive of what is now before us? Your Honor, let me explain a little bit about that rating, and let me explain a little bit about the government's argument regarding the nature of that rating, because that requires an understanding and clarification of how the VA system works. First of all, Mr. Bryant did not know that he had a compensable rating until 2008. He was told by a VA employee in the Baltimore office that he had a 99-14 rating at 100%. That's the first he'd ever heard of a compensable rating. That rating was probably in all likelihood lost in the system because the dental ratings were kept separate for so many years. But your question goes to a more important point, and that is how the VA works and the meaning of those dental rating sheets that the government relies on, and this goes to the problem in this case, Your Honors. The government constantly misrepresents what documents mean and the state of the law and how VA administrative matters work. This is critical to understanding why the government's representations regarding this rating are false, and here's why. The government relies on an argument that the dental rating sheets that are in the file somehow represent a disability rating on the VBA side.  There are two branches to the VA, the VHA, the Health Administration, and the VBA, the Benefits Administration. The problem is the forms that the government submitted are never to be used for disability ratings purposes. The government represents that that's what they represent. They do not, and the authority for that, the legal authority for that, can be found in VA F.A.S.T. Letter 1042, which came out in 2010. In that F.A.S.T. Letter, the head of the compensation department stated that the forms that the government is relying on are never to be used for ratings purposes. They're only used for treatment purposes. In other words, they in no way, shape, or form define any disability rating or any limitation on a disability rating like the 9914 rating that exists in Mr. Bryant's case. Those dental rating sheets that the government put in the file, according to F.A.S.T. Letter 1042, are simply to be used for treatment purposes. What that means is you go into a dental clinic, they're like an intake sheet. The government, the employees there, the dentists who look at you initially, they determine, first of all, are you eligible for dental care? Then they determine what dental care you need, and then ultimately, they use those sheets to pass on to the financial arm of the VHA to get payment for the services provided. You will note that there is no diagnostic rating on those sheets, and there is no percentage rating like 9914 at 100%. That's because, according to F.A.S.T. Letter 1042, those sheets are never to be used for that purposes. A rating for disability purposes only comes from the VBA. Mr. Levinson, I think what we're trying to decide today, I think, is whether the Veterans Court was correct in denying your mandamus petition, because the Veterans Court believed, when it wrote the decision last year, that your client still had other alternative avenues of relief through all your various claims that are in various stages, whether they're at the R.O. or maybe on appeal to the VBA. I think that's the first question we have to decide before we even try to get into the merits of whether the V.A. correctly or incorrectly did something with regard to your client's claims, is why was the Veterans Court wrong in concluding that your client can still go through the regular appeals process, whether it's through the R.O. or whether it's through the board, or ultimately backed up to the Veterans Court on appeal from an adverse court decision. So what is your response to that technical legal question? Your Honor, the answer to that technical legal question is to look at what constitutes an adequate alternative and also a close look at the process that has gone on in this case, which indicates that those avenues are foreclosed by the disingenuous nature of the V.A.'s conduct, which has been designed to delay this case forever and ever. Could you explain to me one thing, which was that, as Judge Lori indicated earlier, the R.O. issued a decision in February 2015, right? Correct. And the R.O.'s decision seemed to be relating to the very same claims of service-connected injuries that you had appealed the year before, or in 2013, and then ultimately, rather than waiting for the board to review that adverse decision in 2013, you filed a mandamus decision that year. Well, you filed a mandamus petition last year to the Veterans Court, right? And then the Veterans Court denied that mandamus petition, believing, under the impression, that if you had just continued on with the appeal process down at the board, you would ultimately get a decision on the merits and then, perhaps, if needed, ultimately get to the Veterans Court. I understand the question. Let me explain to you why we filed the rig. And this is very important because the circumstances that led to this make it clear why we were not getting to the BVA. And that's why we filed the rig, because the R.O. was intentionally acting bizarre and not letting us get there, a pattern of behavior which continues to this day. That's why I say the timeline of events is critical here. Mr. Bryan's case was heard by the BVA and remanded back to the R.O. back on February 22, 2013. I received an acknowledgment letter from the R.O. of my representation on the 21st of March. The remand decision was issued in August of 2013. It should have been expedited back within 30 days. It's still not back there today. Why? Well, we filed, interestingly enough, a response to that decision. That response was lost, and they claim never received. In October, we visited the R.O. We were given very few answers, and we were treated in the most violent manner imaginable. In November 21st, Mr. Bryan received a call from a supervisor at the Baltimore Varo. That supervisor was referred to me. His memorandum, Your Honor, that was written was in the file. I'd like to read to you what he wrote on November 21st, 2013. Also, I informed him, that would be me, that I will reactivate the appeal, and the folder will be certified and returned to the BVA. In other words, Your Honor, the file was supposed to be returned in November of 2013. We made repeated requests to return that file. It was never returned. And by April of 2014, after innumerable phone calls, letters, letters to the BVA, asking them to intervene because they have a concomitant duty to follow up on their own remand, all they did was refer the letters back to the R.O. with nothing more. Nothing was done by anybody, and that's why we filed the writ. Because we were misled time and time again that this particular file would be returned. It was never returned. And was the Veterans Court wrong when it says that the claim was certified for appeal to the Board of Veterans' Appeals on May 9th, 2014? Your Honor, they are correct. It was. And you know what? It's still not there. It's still not back there. And there is no explanation. And after the proceedings in the CAVC, I contacted the general counsel of the VA, the counsel who handled the case. And he told us there was no reason for the file to be held up. And then he sent me another email telling me the file had been sent out for processing. For processing. Instead of sending it back to the BVA, it was sent out for processing. And apparently it's still being processed today. And as for the decision in February, if you look at that decision, it is utterly ridiculous. One of the things they decided, completely contrary to all known black-letter law, is that Mr. Bryan received an expedited appeal to the BVA because he was found to be suffering from financial hardship. The RO then took that decision and argues and concludes that they can use that date, the date of his expedited appeal to the BVA, as a reason to cut off his back benefits before that date. In other words, any benefits he would get would come from 2012 forward. When you say cut off, was he receiving any benefits until then? The point is, Your Honor, that when you apply for VA benefits, as of the date that you file, that's when your back benefits would begin. So if the case is decided... So you're saying it was the entitlement that was cut off. The entitlement was cut off based on the fact that the BVA granted him a waiver of financial hardship so he could have an expedited hearing. In other words, they used his financial hardship as an excuse to create more financial hardship because he was given an expedited appeal before the BVA. There is no way, when you look at that statute, either the black-letter law or the scant legislative history, that that makes sense. It's irrational. Let's hear from the government. And we'll save your rebuttal time. Okay. Thank you, Your Honor. Thank you, Mr. Levinson. Thank you. May it please the Court. This Court should affirm the decision of the... Well, first to start off, this Court does not possess jurisdiction to consider Mr. Bryant's challenge to the decision of the United States Court of Appeals for Veterans Claims 9, his petition for writ of mandamens. Mr. Bryant challenges only the Veterans Court's factual determinations or the application of Veterans Benefit law to fact. Also, even if this Court found that it had jurisdiction... Is this a failure to act or saying we're going to send something back and not doing that? Are all of these alleged procedural irregularities applications of law to fact? Well, Your Honor, the question that the Veterans Court considered, which this Court would review, is whether the writ of mandamens was warranted. And the Veterans Court considered whether there was an adequate alternative means for the veteran to seek the relief that he desires. All of the argument that we've heard, sort of in a raised voice, if I may say so, about the frustrations in dealing with the VA, they are sort of beyond our jurisdiction? Yes, Your Honor. The Court should consider, first of all, whether the Veterans Court properly applied the mandamens standard. So if it's beyond our jurisdiction, where does an aggrieved veteran go for relief if, in fact, whether, say, the files were lost and it was human error and there was not anything malicious about it? Well, where does a person go for relief if not to the court? Well, Your Honor, the typical appeals process that involves the Board of Veterans' Appeals would be the proper manner for a veteran to seek a review. And if they lose the file or don't respond or time goes by? Well, Your Honor. Or something happens in 1978 that the veteran isn't informed about? Well, the things that we have been told about, and that certainly in this briefing process are now brought to the attention of the VA. Where does a person go to try and straighten out and, if need be, make amends? Number one, speed is not a factor that has been found to be a factor for granting a writ of mandamus.  Let's just assume that the courts have authority to write wrongs. Where does a person go if there is a wrong or to determine whether there's been a wrong in this case of the specific veteran accommodation that the nation is bound to? The issue that Mr. Bryan has raised is one of whether the process in the appeals process that would be the typical process and also whether the claim processing process is moving quickly enough. And that is not one that the court has found that it would have jurisdiction to consider that would support a writ of mandamus. For example, in the Beasley case, the court noted that objections to the speed of the Secretary's actions Well, let me ask you a question. What is the status of his appeal to the board from the denial of those various claims? He tried to appeal in 2013, right? And then, for whatever reason, it got stuck in the VA, right? As the Veterans Court noted, the claim was certified for appeal to the board in May 2014. Well, what does that mean? We just heard from the other side that it's been stuck in processing. So what's the current status of it? Has the board rendered a decision on it? No, Your Honor. In 2015, it hasn't rendered a decision on it yet? No, Your Honor. The claims file has had to remain with the regional office for several reasons. The processing that Mr. Bryan's counsel has mentioned was due to processing to provide a response to Mr. Bryan's counsel's FOIA request. That is not in the record, but this is what processing was required for. There were also additional communications from counsel to the regional office. Where is the file right now? With the regional office. It still isn't at the board? Well, at this point, the veteran has continued to make additional communications to the regional office, is now wishing to set up medical examinations, and this is further development of his claim. The file needs to remain with the regional office to include this new development. This has resulted in the file not being sent to the board. Now, if Mr. Bryan wants to challenge a new decision. So you're saying that if the veteran is sending in submissions to the VA for this, that, and the other, that holds up the appeals process necessarily? It is holding up the movement of the claim file. The claim is continuing to be developed. The medical decisions that have been requested by the recent decision of February 20th, 2015, are ones that shall be conducted, and that will allow the development of a claim that then the board can consider. Assume I don't know anything about the veteran's administrative claim process. What is the relationship between the RO decision from February of this year and the pending board appeal that's been pending since 2013? It appears to be they're in parallel with each other in terms of seeking the same kind of benefits on the same claims, right? Although the claim was certified for appeal to the board because of the additional claim development, now that claim would not be submitted to the board that the claim has developed. Right, but could you just explain to me what happened? Why are we looking at a situation where there were certain claims denied? There was an appeal to the board, and then, I don't know, to me, seemingly out of the blue, now there's a second RO decision that's granting some benefits, but mainly denying those benefits yet again. And so I'm just trying to understand what's going on here. As Mr. Bryan submitted additional materials and as additional claim development was conducted, the claims file developed, and the claims file cannot be sent to the board for its consideration until the claim processing is completed. It would be inefficient for the claims not to be developed before the board reviews it. In this case, Mr. Bryan has received certain of the relief that he sought. For example, his PTSD rating has increased from 10% to 30% thanks to the February 2015 decision. Similarly, there was an increase in the rating for the scars to his scalp, also from 10% to 30%. And as for the claimed 30-year entitlement to a 100% rating, the decisions of the regional office in August 6, 2013, and again in February 2015, demonstrate that Mr. Bryan is simply not entitled to compensation under that code, and this is because the code relates to loss of half of your maxilla or your upper jaw. The two decisions state clearly that the diagnostic and clinical evidence, the dental exams and x-rays, demonstrate that he is not missing any portion of his maxilla. Well, without getting into the facts, of all of the veterans' cases that have come before us, I don't remember any where a person has been rated 100% disabled for, without saying for, and that we have been told that that's all right, we'll give you medical treatment, but it doesn't count for compensation. Is there a gap in the transmission between these two branches of the VA, or a failure on whose part? Is it a failure on the veteran's part? Apparently he never received notice of that 1978 until just a few years ago. Well, Your Honor, we have not received any evidence of this 1978 rating either. However, there is no evidence presented by the veteran in his appendix that such a rating ever existed. None of the decisions that we've noted show that. There was no rating. I didn't see any denial in your brief. What you said was that this was a diagnostic code and not a compensation code. If you're now telling us that this came out of whole cloth or thin air or whatever, that's quite a new concept and quite a dramatic one. But, Your Honor, we noted that both the August 6, 2013 decision and the February 20, 2015 Regional Office decision state that Mr. Bryan is not missing any portion of his maxilla. Therefore, he could not in 1978 have been missing a portion of his maxilla, which would have entitled him to any rating for 100% disability under that code. Mr. Bryan has only referred to a computer printout, and for the first time here in this argument, he claims to have spoken with someone at the VA Regional Office. Those are the only references anywhere to there having ever been any entitlement. I think there's something in the appendix from that date. Your Honor, there are only from the supplemental appendix. We've included the dental rating form at supplemental appendix 113 to 116. If there was no evidence of it, you didn't say so in your brief. You just accepted it and shrugged it off? Your Honor, the decisions of the Regional Office state that there was no loss of maxilla, and for that reason— But what is the government's position, that there was never, back in 1978, any kind of rating? Yes, Your Honor, there was never a rating in 1978 that this code applies and that half of the veteran's maxilla was lost. The evidence from that time period shows only that there was dental trauma and teeth loss. As we have pointed out, Diagnostic Code 9914 requires that you actually lose half of your upper jaw and that your teeth are lost for that reason, not that you have an impact to your teeth and then they are lost. What I hear you saying is that this is a convoluted process and maybe it's a sluggish process and whatever the details are, they're beyond us and that the workings of the process are an administrative question, not subject to judicial review either. That's correct, Your Honor. The court lacks jurisdiction to consider the factual determinations of the veteran. How can it be correct? There's no denial that this veteran was seriously injured when the hatch closed on him. There apparently is still dents in his skull and I don't know what else. And here we are, now all these years after Vietnam, arguing about where the file is or whatever it is and how to interpret an, at best, ambiguous, strange document. It does look very strange when it's something that says 100% injury and now you tell us, well, it didn't take his jaw off, just took his teeth out. Or whatever factual issue you are telling us, we don't get to consider. You're saying there's no obligation at this stage, and particularly now before the court, to try and figure it out and get it straight, whatever the right thing is? I don't know if this veteran is entitled or not, but we see one gap after another. The court does not have jurisdiction to consider the factual determinations of the Veterans Court, nor does it have jurisdiction to consider medical determinations of the VA. You're saying the Veterans Court doesn't have jurisdiction to consider medical aspects? This court does not have jurisdiction to consider the medical questions that the veterans... And this is a constitutional issue of due process. The veteran did not raise a due process argument in his amended petition. Is that the VA's position, that if the veteran doesn't raise a due process argument, that he receives due process? The position of the government is that Mr. Bryan did not raise a due process argument before the Veterans Court, therefore there is no constitutional decision of the Veterans Court for this court to review. The Veterans Court considered the factual issue of whether Mr. Bryan would be able to receive, through the regular appeals process, a consideration of his arguments and his claims. You say we don't have jurisdiction, but what about this court's decision in Lamb, where we said that, yes, we can review whether or not, below it was correctly decided, whether there was an alternate avenue of relief? Well, Your Honor, in Lamb, the court noted that it was not reviewing any facts related to whether the veteran was service-connected, when the disability began, or the extent of the disability. Also, the question... But you didn't dismiss that case for lack of jurisdiction, right? Correct, Your Honor. To respond, I will need to go past my 15 minutes of allotted time. In Lamb, the court did not dismiss for lack of jurisdiction. However, I believe the court's more recent Beasley decision explains the court's reasoning in Lamb and presents the court's determination on when it will exercise jurisdiction. It noted that, in that case, the question was the scope of the legal obligation imposed on VA to assist a veteran, and that the mandamus factors do not require consideration of the factual merits of a veteran's claim or the manner in which a rule governing veteran's benefits has been applied to a particular fact. It also noted that, in the court's Gebhardt v. Peake case, objections to speed were not found to support a jurisdictional basis, and that those arguments did not identify a legal right that required protection through a written mandamus. Also, the court noted in Beasley that whether the secretary had refused to adjudicate a claim was a factual issue, and there was no jurisdiction. What if I think that the BVA really ought to issue an opinion this year on his claim that was pending since 2013? What has to happen to make that happen? The veteran now has a rating decision from February 20, 2015. There is additional development moving forward on the issues that that decision deferred for medical examination. The veteran may appeal to the Board of Veterans' Appeals and receive the normal appellate process for consideration of that claim. Any more questions for the secretary? Any more questions for the secretary? Thank you. Thank you. Let's see. We've run over a bit. Let's add that to Mr. Levinson's rebuttal time. Okay. Thank you, ma'am. If it pleases the court, on rebuttal, I'd like to make a couple of critical points here about some of the representations made by the VA's counsel here this morning. I mentioned earlier the VA has a habit of twisting apples into oranges. Let me just point out a couple of critical things that are easily proven by the record. I mentioned earlier there were emails from the general counsel to me in August of 2014. Counsel represented that the file was being processed for new developments. If you look at those emails Is this August 2013? You said August 2014. No, this is after the CAVC issued its judgment, and this is coming into August 26 of 2014. This is from the general counsel's office. The general counsel represented to me that the processing, and there's also an email to him that was included in the chain from a Baltimore representative. The processing was because they were moving to a digital environment, and they were going to turn the paper files into a digital form rather than send them back to the BVA. There was no mention of any claim development. In fact, he specifically said, the general counsel, there was nothing pending. So the processing really, according to the VA itself, was about moving to a digital environment, not about claims development because there was nothing to develop at that point. There was no new claim on the table. Again, a misrepresentation. Further, Your Honor, the counsel mentioned that there was never a constitutional claim before the court below. I would call the court's attention to the original writ filed in the CAVC. The very first point heading discussed the due process clause of the Fifth Amendment. It was all about due process under the U.S. Constitution. That whole first point heading, that whole first section. It absolutely was raised in the very first point heading before the CAVC. What we have here, plain and simple, is an absolute denial of due process. It is clear from the record that the VA has done everything humanly possible to keep this file from going back to the BVA. Why would they do that? Because they do not want to lose this case, or perhaps they just want to keep it tied up forever. I don't know. You have to ask the VA. We just heard from the government's counsel that it's because of you continuing to file extra information or extra claims that require the file to remain in VA. The interesting thing about that, Your Honor, is we never filed anything. That's the interesting thing. As I just said to the Court, we filed nothing. And as the VA counsel acknowledged- How did the RO decision come about in February 2016? The RO decision literally came out of the blue. It literally came out of the blue when they filed their response brief to this. In other words, we knew nothing about that process. I was shocked to see that decision. So was Mr. Bryant. We knew nothing about an ongoing process to consider anything. That's what you want, the decision. You want the process to move forward. Your Honor, the process moves forward by the government following the remand directions of the BVA as required by law, not by creating a whole other process that denies Mr. Bryant most of his claims, cuts off his back benefits in 2012 as a punishment for being granted expedited treatment for financial hardship, a ludicrous proposition if ever there was one, completely defiant of the rule of law. In other words, they create their own process because they knew they had to come here. They wanted to be able to say they had done something. That's the only rational explanation for it. The fact is what they did was they created a process by which Mr. Bryant is being punished for suffering from financial hardship. They give him virtually nothing beyond what he already had. And then they come here and tell you they're supplying a process that we knew nothing about and played no role in and submitted no paperwork whatsoever. So as I understand it, what you want is this appeal to finally get to the board so that the board can issue a decision. At this point, what we would like this court to do is to recognize the 99-14 rating as a matter of law. It is a truly legal question. Assume we don't do that. Well, then in the alternative, yes, an expedited return to the BVA. But let's remember this rating has existed for well over 20 years, and now the BVA— Is that in the record? It is, Your Honor. If you look at that printout that came directly from the regional office, that's an official VA document. We didn't create that out of whole cloth. That is a document that is an official document which lists his rating at 99-14. That didn't come out of nowhere. It had to come from somewhere in the VA system. We certainly didn't create it. The VA did, and it's been in existence since 1978. After 20 years, a rating becomes vested unless the rating was created by a fraudulent act of the veteran. There is no fraudulent accusation here. So to be sure that I understand the answer to Judge Chen's question, the remedy, the most likely remedy that would be the most direct path to resolving the situation as it stands. The most direct route would be to grant the 99-14 rating. Otherwise, the VA will keep— I don't think we can do that as a matter of our jurisdiction. So I assume we can't do that, that there has to be some further procedure. Then the case should go directly to the BVA. The problem is the court does have the ability to recognize something that is created as a matter of law. It's a purely legal question that the court can recognize. We're not asking the court to issue a rating. We're simply asking the court to recognize as a matter of law that the rating exists. In other words, we're not asking the court to make a rating determination, but rather to recognize a point of law that after 20 years, a rating becomes vested, and they can't come in and tear it up and create a whole new rating and a whole new process, which would seem to me completely violative of the rule of law, due process, many known notions that our Constitution would establish. Any more questions, Mr. Levinson? Any more questions? Okay. Thank you. Thank you both. Thank you, Your Honor. Thank you for your time. Thank you. Thank you.